IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| TIFFANY MARTIN, | § | CIVIL ACTION NO._____ |
| ASTORIA STUBBS, | § | |
| LACHAYA WRIGHT, | § | |
| MARIA MURDOCK, | § | |
| MEAGHAN NYSTROM, | § | |
| CAROL KIMBLE, | § | |
| AND ALYSHIA CRUMBLEY, | § | |
| PLAINTIFFS | § | |
| | § | |
| VS. | § | |
| | § | |
| HAIRCLUB FOR MEN, LTD., INC., | § | (JURY DEMANDED) |
| HAIRCLUB FOR MEN, LLC, | § | |
| ADERANS AMERICA | § | |
| HOLDINGS, INC, | § | |
| AND JOHN DOE, | § | |
| DEFENDANTS | § | |

ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COMES NOW PLAINTIFFS, ALYSHIA CRUMBLEY, CAROL KIMBLE, TIFFANY

MARTIN, MARIA MURDOCK, MEAGHAN NYSTROM, ASTORIA STUBBS and

LACHAYA WRIGHT, filing their Original Complaint complaining of HAIR CLUB FOR MEN,

LTD., INC.,  HAIRCLUB FOR MEN, LLC, ADERANS AMERICA HOLDINGS, INC., AND

JOHN DOE., FOR THE REMAINDER OF THIS LAWSUIT WHEN PLAINTIFF REFERS TO

HAIRCLUB, it is in reference to ALL NAMED DEFENDANT's HAIR CLUB FOR MEN,

LTD., INC.,  HAIRCLUB FOR MEN, LLC, ADERANS AMERICA HOLDINGS, INC, AND

JOHN DOE, and in support thereof would show as follows:

## I.

### JURISDICTION, PARTIES AND VENUE

1.      This Court has jurisdiction over the causes of action alleged by Plaintiffs pursuant to Title

VII of the Civil Rights Act of 1964, as amended ("Title VII").

2.      ALYSHIA CRUMBLEY ("CRUMBLEY") is an individual and a resident of Houston,

Texas. CRUMBLEY, female, is a member of a group protected by Title VII and was at all

relevant times an employee within the meaning of the applicable statute. The EEOC issued a

Right to Sue Notice on June 14, 2013 authorizing this lawsuit.

3.      CAROL KIMBLE ("KIMBLE") is an individual and a resident of Missouri City, Texas.

KIMBLE, female, is a member of a group protected by Title VII and was at all relevant times an

employee within meaning of the applicable statute. The EEOC issued a Right to Sue Notice on

June 19, 2013 authorizing this lawsuit.

4.      TIFFANY MARTIN ("MARTIN") is an individual and a resident of Houston, Texas.

MARTIN, female, is a member of a group protected by Title VII and was at all relevant times an

employee within the meaning of the applicable statute. The EEOC issued a Right to Sue Notice

on June 19, 2013 authorizing this lawsuit.

5.      MARIA MURDOCK ("MURDOCK") is an individual and a resident of Pearland, Texas.

MURDOCK, female, is a member of a group protected by Title VII and was at all relevant times

an employee within the meaning of the applicable statute. The EEOC issued a Right to Sue

Notice June 14, 2013 authorizing this lawsuit.

6.     MEAGHAN NYSTROM ("NYSTROM") is an individual and a resident of Spring, Texas. NYSTROM, female, is a member of a group protected by Title VII and was at all relevant times an employee within the meaning of the applicable statute. . The EEOC issued a Right to Sue Notice on June 19, 2013 authorizing this lawsuit.

7.     ASTORIA STUBBS ("STUBBS") is an individual and a resident of Houston, Texas. STUBBS, female, is a member of a group protected by Title VII and was at all relevant times an employee within the meaning of the applicable statute. The EEOC issued a Right to Sue Notice on June 19, 2013 authorizing this lawsuit.

8.     LACHAYA WRIGHT ("WRIGHT") is an individual and a resident of LaMarque, Texas. WRIGHT, female, is a member of a group protected by Title VII and was at all relevant times an employee within the meaning of the applicable statute. . The EEOC issued a Right to Sue Notice on June 14, 2013 authorizing this lawsuit.

9.     Defendant, HAIR CLUB FOR MEN, LTD., INC., is a national company whose offices are located at 7201 Metro Boulevard Minneapolis, MN 55439. Defendant operates (and has continuously been operating) in the State of Texas.

10.    Defendant, HAIR CLUB FOR MEN, LLC., is a national company whose offices are located at 7201 Metro Boulevard Minneapolis, MN 55439. Defendant operates (and has continuously been operating) in the State of Texas.

11.    Defendant ADERANS AMERICA HOLDINGS, INC., is a national company whose offices are located at 9100 Wilshire Boulevard, East Tower, 9th Floor Beverly Hills, CA 90212. Defendant operates (and has continuously been operating) in the State of Texas.

12.    Defendant JOHN DOE., is a national company whose offices are unknown. Defendant operates (and has continuously been operating) in the State of Texas. All Defendants listed

3

above engaged in an industry affecting commerce and employed more than 15 regular employees. The causes of action complained of herein wholly or partly arose in the Houston, Texas. HAIR CLUB FOR MEN, LTD., INC., HAIRCLUB FOR MEN, LLC, ADERANS AMERICA HOLDINGS, INC., AND JOHN DOE, are Texas companies located in Houston, Texas and which regularly conducts business in Houston, Texas. HAIR CLUB FOR MEN, LTD., INC., HAIRCLUB FOR MEN, LLC, ADERANS AMERICA HOLDINGS, INC., AND JOHN DOE, was at all relevant times an employer within the meaning of Title VII.

13.     The employment practices alleged to be unlawful herein were committed within the Southern District of Texas, Houston Division. Venue is appropriate in this Court.

## VICARIOUS LIABILITY- RESPONDEAT SUPERIOR

14.     Whenever in this pleading it is alleged that Defendant did any act or thing, or failed to do any act or thing, it is meant that Defendant's officers, owners, servants, employees, or representatives including but not limited to Managing Director Derrick Tomlin, Gina Fanning (a.k.a. Gina Lassien), Leslie Gorman, and Yolanda Bresnio did such act or thing, or failed to do such act or thing, or that such act or thing or omission was done in the course and scope of that person's employment at Defendant HAIR CLUB, or in the furtherance of Defendant's interests, or with the full authorization, permission, tolerance, and/or ratification of Defendant, or was done by an authorized member of management of Defendant HAIR CLUB or was done in the normal routine of the accepted, tolerated, or permitted conduct, customs, and/or practices of Defendant HAIR CLUB's officers, owners, servants, employees, or representatives.

4

## II.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

15.     CRUMBLEY, KIMBLE, MARTIN, MURDOCK, NYSTROM, STUBBS, and WRIGHT each filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and Civil Rights Division, Texas Workforce Commission on or about October 15, 2012. In their charge, CRUMBLEY, KIMBLE, MARTIN, MURDOCK, NYSTROM, STUBBS, and WRIGHT assert that they were sexually harassed and retaliated against. CRUMBLEY, KIMBLE, MARTIN, MURDOCK, NYSTROM, STUBBS, and WRIGHT have exhausted their administrative remedies and file this suit within the statutory limitations period.

## III.

## FACTUAL BACKGROUND

### ALYSHIA CRUMBLEY

16.     CRUMBLEY began working at HAIR CLUB on March 7, 2007 as a stylist. Her employment with HAIR CLUB ended July 7, 2012.

17.     CRUMBLEY was subjected to unwelcomed sexual acts by Manager Derrick Tomlin and Sales Support Administrator Gina Fanning while employed with HAIR CLUB. Some of the instances are as follows: Tomlin telling CRUMBLEY on more than one occasion that she had a large behind and that she needed to "show more skin"; Tomlin requesting to see CRUMBLEY's breasts and inappropriately kissing CRUMBLEY on the back of her neck; Tomlin sitting and spreading his legs while in a meeting and placing his hands on his penis. In one instance, CRUMBLEY requesting time off for bereavement and Tomlin asking, "What am I going to get?" Fanning squeezing CRUMBLEY's breasts on at least seven separate occasions and raising up

5

CRUMBLEY's dress; Fanning raising up her own dress and showing her tampon to employees; Fanning advising clients as to what they should do "sexually" to women in the bedroom.

18.     CRUMBLEY made her complaint against Fanning known to Manager Derrick Tomlin. Although Tomlin stated that he would take care of it, no action was taken. The HAIR CLUB does not display the required posters for the complaint process. In addition, there is a complaint line, however, Tomlin would be the person to intercept the phone calls.

19.     The sexual harassment reporting process was intimidating and futile, as Derrick Tomlin was a company manager. Refusal to participate when he made sexual advances was met with retaliatory measures.

**CAROL KIMBLE**

20.     CAROL KIMBLE began working at HAIR CLUB on or about July 24, 1990 as a technician and was promoted various times throughout the years of her employment with HAIR CLUB. She was eventually promoted to Women's Multi-cultural Trainer but demoted in January 2012.

21.     KIMBLE was subjected to unwelcomed sexual acts by Manager Derrick Tomlin and Sales Support Administrator Gina Fanning while employed with HAIR CLUB. Some of the instances are as follows: squeezing of KIMBLE's buttocks; commenting on the type of underwear KIMBLE wore and staff's ability to notice it; pulling on KIMBLE's underwear; Fanning pulling up her dress and showing KIMBLE her buttocks; Fanning putting her breasts in KIMBLE's client's face; Fanning telling KIMBLE's client whom was a doctor that she needed a prescription for STD medication.

22.     In another particular instance, Fanning was giving TIFFANY MARTIN a tour of the facility.  Both Fanning and MARTIN entered KIMBLE's office while KIMBLE was serving a client.  KIMBLE overheard Fanning tell MARTIN that she should try to solicit gifts from the client because he showed an interest in her.

23.     KIMBLE purports that the sexual harassment is not limited to the Houston location. During a National Meeting in 2010 KIMBLE witnessed the vice president have sex with another employee in the pool.

24.     The sexual harassment reporting process was intimidating and futile. KIMBLE was previously subjected to unwelcomed sexual acts by and between the Vice President of Education and Development, Leslie Gorman, and former Managing Director, Laurie Lombardino. After reporting the harassing sexual acts KIMBLE began being retaliated against. KIMBLE learned that Gorman was seeking to eliminate her position. In addition, Gorman eliminated KIMBLE's training classes, responsibilities, continuing education courses, photo shoot opportunities, and attendance at trade shows and national meetings. KIMBLE also received a poor review after reporting the sexual acts.

25.     Further, after returning to work August 1, 2012 due to a knee injury, KIMBLE learned that her position had in fact been eliminated and that she would be demoted to Stylist, thereby causing a substantial pay cut. Although there were higher level positions available that KIMBLE qualified for, these were not offered to KIMBLE.   Gorman also told KIMBLE that she was not allowed to apply for the Regional Trainer position.

**TIFFANY MARTIN**

26.     MARTIN worked for HAIR CLUB from September 2011 to August 2012. After about approximately two months of being employed there, Tomlin began to make sexual advances directed at MARTIN.

27.     MARTIN was subjected to unwelcomed sexual acts by Manager Derrick Tomlin and Sales Support Administrator Gina Fanning while employed with HAIR CLUB. Some of the instances are as follows: on a particular evening on or about the New Year's weekend 2011, Tomlin sent a text message to MARTIN asking her to engage in sexual intercourse with him. After MARTIN refused, Tomlin continued to make sexual advances. On several occasions Tomlin called MARTIN into his office, locked the door and began touching MARTIN inappropriately. Tomlin also pulled Fanning's breasts out and played with them; afterward he stated it was MARTRIN's turn and started fondling her breasts.

28.     Tomlin soon became hostile with MARTIN after her continued rejection of his sexual advances. After work hours, Tomlin threatened MARTIN's job. MARTIN continued to rebuff Tomlin, but out of fear of losing her job, she never reported the incidents. MARTIN experienced severe depression during the time she was employed at HAIR CLUB.

29.     After reaching a breaking point, MARTIN resigned her position which is tantamount to a constructive discharge. HAIRCLUB FOR MEN, LTD., HAIRCLUB FOR MEN, LLC, ADERANS NORTH AMERICA and HC (USA) INC, sexual harassment policies failed MARTIN. Due to Hostile work environment Quid Pro Quo employer's policy against sexual harassment failed to function effectively. MARTIN'S first level supervisor Derrick Tomlin had

8

the responsibility for reporting and correcting harassment at the company, yet he was the harasser.

**MARIA MURDOCK**

30.     MURDOCK was employed with HAIR CLUB from May 2012 to September 2012.

31.     MURDOCK was subjected to unwelcomed sexual acts by Manager Derrick Tomlin, Sales Support Administrator Gina Fanning and others while employed with HAIR CLUB. Some of the instances are as follows: telling MURDOCK that she needed wear a bra that brought her "titties" were under her chin; and telling MURDOCK she needed to wear low cut tops, short skirts or dresses; among other things. On several occasions, Tomlin would mention the glitter body oil that MURDOCK wore. Tomlin would say things like, "does that glitter go all the way up those legs," "I wonder where that glitter stops," or, "You (MURDOCK) leave glitter everywhere you sit down and it makes me curious." Tomlin stated that employees needed to wear "sexy jeans- the ones that make your ass look good."

32.     On numerous occasions, Fanning would raise her skirt and show her genitals. Fanning would also openly touch her vaginal area in front of employees in order to perform, what she referred to as a "fresh check." Fanning would constantly expose her vagina in the workplace.

33.     MURDOCK reported this behavior to Lindsay (Last Name Unknown), Christine Sculli, and Jacqueline Dull. All promised that there would be no retaliation as MURDOCK expressed her need to keep her job. Each promised MURDOCK that she would be "okay."

34.     MURDOCK also noticed that the facility lacked the State required posters or signs in the employee area that illustrated where someone should to report sexual harassment. When she

9

mentioned this to Tomlin, he stated that he would put it up.  As of MURDOCK's last day, the signage had not been placed. The employer should have an effective preventative program that should include an explicit policy against sexual harassment that clearly and regularly communicated to employees and effectively implemented.

35.    After reporting the incidents MURDOCK was terminated on September 22, 2012, because she protested against sexual harassment and other unlawful employment practices that was directed towards her and fellow coworkers.

**MEGHAN NYSTROM**

36.    NYSTROM began working at HAIR CLUB in approximately May 2012 as a Stylist. She was employed with HAIR CLUB until August 2012.

37.    NYSTROM was subjected to unwelcome sexual acts by Managing Director Derrick Tomlin while employed with HAIR CLUB.  Some of the instances are as follows: grabbing NYSTROM by the shoulders and pulling her into him while smelling her neck; making negative comments about NYSTROM'S  weight; approaching NYSTROM from behind and rubbing her shoulders; and conducting sexually explicit morning meetings in which employees were forced to perform; among other things.

38.    After returning from training, Tomlin called NYSTROM into his office.  During the meeting Tomlin asked NYSTROM about her nightly activities during the training session. Off-put, NYSTROM began to explain her discomfort with his questioning. Tomlin then cut off her speech and said, "Look, I don't care how you fuck, what you fuck, when you fuck, or where you fuck." NYSTROM felt extremely uncomfortable and uneasy when Tomlin was around her.  As

10

a result, NYSTROM spoke with Maria Murdock.  Maria Murdock suggested that NYSTROM record and document the occurrences because the occurrences were extremely inappropriate.

39.     The sexual harassment reporting process was intimidating.

40.     After reporting the sexual harassment, NYSTROM continued to experience sexual harassment. NYSTROM was excessively and/or unjustly harassed.

**ASTORIA STUBBS**

42.     STUBBS began working at HAIR CLUB in July 2010 as a stylist.

43.     STUBBS was subjected to unwelcome sexual acts by Managing Director Derrick Tomlin while employed with HAIR CLUB.  Some of the instances are as follows: asking for hugs, grabbing STUBB's butt, asking STUBBS to turn around so he could see her butt, asking what type of underwear she has on; approaching her from behind and smelling her neck; cornering her, inappropriately hugging her, and groping her.

44.     On a particular instance, STUBBS submitted a form to request time off.  Tomlin did not honor the request. Tomlin later came to STUBBS hugging her and grabbing her butt for several seconds at which time Tomlin said he was now ready to sign the form.  STUBBS did not display any opposition out of fear that she would lose her job or management would retaliate.

**LACHAYA WRIGHT**

45.     WRIGHT began working at HAIR CLUB in December 9, 1997.

46.     WRIGHT was subjected to unwelcome sexual acts by Managing Director Derrick Tomlin, Gina Fanning, and Leslie Gorman while employed with HAIR CLUB. Some of the

instances are as follows: Gorman asking to see WRIGHT's breasts, Tomlin and Fanning commenting on how large WRIGHT's butt was; degrading morning meetings where employees would be shaking their butts at the instruction of management; Fanning showing her vagina to employees even when wearing a tampon; Tomlin exposing his penis to WRIGHT; Tomlin inappropriately kissing WRIGHT's neck and grabbing her butt.

47.     During the meetings that Tomlin had with WRIGHT, Tomlin would close the door to his office and try to touch WRIGHT's butt and breast.  Tomlin would smell WRIGHT's neck and grab her or hit her on the butt in the hallways.

48.     Fanning would host "shake your ass" activities during the morning meetings.  Fanning would also pull up her dress and show her buttocks.  Tomlin was present during these meetings, and did not object.

49.     On one instance in particular, Tomlin was driving WRIGHT back to the center from an employee appreciation lunch.  While in the car, Tomlin showed WRIGHT his penis and asked if WRIGHT enjoyed oral sex.

50.     *After* refusing his advances, Tomlin demanded more work out of WRIGHT.  Tomlin referred to WRIGHT as his "workhorse."

12

## IV.

## CAUSES OF ACTION

### SEX DISCRIMINATION
### QUID PRO QUO SEXUAL HARASSMENT

**A.   SEXUAL HARASSMENT CRUMBLEY, KIMBLE, MARTIN, MURDOCK, NYSTROM, STUBBS, and WRIGHT**

51.   PLAINTIFF'S repeat and re-allege by reference each and every allegation contained in the paragraphs above and incorporate the same herein as though fully set forth.

52.   Employers are forbidden to discriminate against an employee because she is female. 42 U.S.C. § 2000e-2(a) & (m). Such discrimination includes unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature when submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, or submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual. 29 C.F.R. § 1604.11 (a).

53.   A plaintiff makes out a prima facie case of quid pro quo sexual harassment by demonstrating she/he belongs to a protected class, was subjected to unwanted sexual harassment the harassment was based on plaintiff's sex, and the harassing behavior affected a tangible aspect of the plaintiff's employment. Plaintiff's CRUMBLEY, KIMBLE, MARTIN, MURDOCK, NYSTROM, STUBBS, and WRIGHT meet all of these requirements.

54.   Plaintiff's are a member of the protected class "female".

54.   HAIR CLUB, through its agents, supervisors, or employees engaged in unlawful sex discrimination by subjecting CRUMBLEY, KIMBLE, MARTIN, MURDOCK, NYSTROM, STUBBS, and WRIGHT to unwelcome sexual harassment.

13

55. The above-described unwelcome sexual harassment created an intimidating, oppressive, hostile and overtly offensive work environment, which interfered with CRUMBLEY, KIMBLE, MARTIN, MURDOCK, NYSTROM, STUBBS, and WRIGHT'S emotional and physical well-being.

56.   HAIR CLUB at all times relevant hereto had actual and/or constructive knowledge of the conduct described in paragraphs above in large part because of Bresnio's influential position and the open and obvious nature of the sexual misconduct.

57.   As a result of the hostile and offensive work environment perpetrated by HAIR CLUB through its agents, supervisors, or employees, and maintained by HAIR CLUB's failure to protect CRUMBLEY, KIMBLE, MARTIN, MURDOCK, NYSTROM, STUBBS, and WRIGHT from further harassment, CRUMBLEY, KIMBLE, MARTIN, MURDOCK, NYSTROM, STUBBS, and WRIGHT suffered severe emotional distress.

58.   HAIR CLUB violated Title VII by failing to adequately supervise, control, discipline, and/or otherwise penalize the conduct, acts, and omissions of Tomlin, Fanning, Gorman and Bresnio as described in the paragraphs above.

59.   HAIR CLUB failed to comply with its statutory duty to promptly take all reasonable and necessary steps to eliminate sexual harassment from the workplace and to prevent it from occurring in the future.

60.   As a direct and proximate result of HAIR CLUB's willful, knowing and intentional discrimination against CRUMBLEY, KIMBLE, MARTIN, MURDOCK, NYSTROM, STUBBS, and WRIGHT through its agents, supervisors, or employees, CRUMBLEY, KIMBLE, MARTIN, MURDOCK, NYSTROM, STUBBS, and WRIGHT have suffered and will continue to experience pain and suffering, and extreme and severe mental anguish and emotional distress;

14

they have incurred and/or will incur medical expenses for treatment by psychotherapists and other health professionals, and for other incidental expenses; and they have suffered and/or will continue to suffer a loss of earnings and other employment benefits and job opportunities. CRUMBLEY, KIMBLE, MARTIN, MURDOCK, NYSTROM, STUBBS, and WRIGHT are thereby entitled to general and compensatory damages in amounts to be proven at trial.

61.     As a further direct and proximate result of HAIR CLUB's violation of Title VII, as heretofore described, CRUMBLEY, KIMBLE, MARTIN, MURDOCK, NYSTROM, STUBBS, and WRIGHT have been compelled to retain the services of counsel in an effort to enforce the terms and conditions of the employment relationship with HAIR CLUB, and have thereby incurred, and will continue to incur, legal fees and costs, the full nature and extent of which are presently unknown to CRUMBLEY, KIMBLE, MARTIN, MURDOCK, NYSTROM, STUBBS, and WRIGHT. CRUMBLEY, KIMBLE, MARTIN, MURDOCK, NYSTROM, STUBBS, and WRIGHT request that attorney's fees be awarded pursuant to Title VII.

**B.     RETALIATION AS TO CRUMBLEY, KIMBLE, MARTIN, MURDOCK, NYSTROM, STUBBS, and WRIGHT**

62.     CRUMBLEY, KIMBLE, MARTIN, MURDOCK, NYSTROM, STUBBS, and WRIGHT repeat and re-allege by reference each and every allegation contained in the paragraphs above and incorporates the same herein as though fully set forth.

63.     After reporting the conduct, CRUMBLEY, KIMBLE, MARTIN, MURDOCK, NYSTROM, STUBBS, and WRIGHT were subsequently and repeatedly harangued, denigrated, and terminated.

64.     As herein alleged, HAIR CLUB illegally retaliated against CRUMBLEY, KIMBLE, MARTIN, MURDOCK, NYSTROM, STUBBS, and WRIGHT because they reported and opposed the sexual maltreatment of Tomlin, Fanning, Gorman and Bresnio. HAIR CLUB has no

legitimate business reasons for any such acts. Each act of retaliation is in violation of Title VII's anti-retaliation provision. 42 U.S.C. § 2000e-3(a).

65.     As a direct and proximate result of HAIR CLUB's willful, knowing and intentional discrimination and retaliation against them, CRUMBLEY, KIMBLE, MARTIN, MURDOCK, NYSTROM, STUBBS, and WRIGHT have suffered and will continue to suffer pain and suffering, and extreme and severe mental anguish and emotional distress. They have suffered and/or will continue to suffer a loss of earnings and other employment benefits and job opportunities. CRUMBLEY, KIMBLE, MARTIN, MURDOCK, NYSTROM, STUBBS, and WRIGHT are thereby entitled to general, compensatory and punitive damages in amounts to be proven at trial.

The above-described acts on HAIR CLUB' part were undertaken in violation of Title VII and proximately caused CRUMBLEY, KIMBLE, MARTIN, MURDOCK, NYSTROM, STUBBS, and WRIGHT substantial injuries and damages.

## V.

## JURY DEMAND

66.     CRUMBLEY, KIMBLE, MARTIN, MURDOCK, NYSTROM, STUBBS, and WRIGHT requests that this action be heard before a jury.

## VI.

## DAMAGES

67.     HAIR CLUB's conduct constitutes violations of statutory law. Such unlawful conduct seriously affects CRUMBLEY, KIMBLE, MARTIN, MURDOCK, NYSTROM, STUBBS, and WRIGHT in their occupation, trade and business. Because of HAIR CLUB's unlawful conduct, Plaintiffs have suffered, suffers, and will continue to suffer humiliation, mental anxiety and

16

stress, and other damages. CRUMBLEY, KIMBLE, MARTIN, MURDOCK, NYSTROM, STUBBS, and WRIGHT have suffered direct injury as a proximate result of the unlawful discriminatory practices, policies and procedures of HAIR CLUB. Accordingly, CRUMBLEY, KIMBLE, MARTIN, MURDOCK, NYSTROM, STUBBS, and WRIGHT seek all general, special, incidental and consequential damages in an amount to be proved at trial.

68.     Because of HAIR CLUB's unlawful and tortious conduct, it has been necessary for CRUMBLEY, KIMBLE, MARTIN, MURDOCK, NYSTROM, STUBBS, and WRIGHT to retain the undersigned attorney to represent then in these causes of action. CRUMBLEY, KIMBLE, MARTIN, MURDOCK, NYSTROM, STUBBS, and WRIGHT have agreed to pay their attorney reasonable attorney's fees for the preparation and trial of these causes.

69.     Additionally, CRUMBLEY, KIMBLE, MARTIN, MURDOCK, NYSTROM, STUBBS, and WRIGHT have incurred out-of-pocket expenses, which include litigation costs and other expenses to preserve their ability to earn a living. Accordingly, Plaintiffs seek all general, special, incidental and consequential damages as shall be proven at trial.

70.     Further, CRUMBLEY, KIMBLE, MARTIN, MURDOCK, NYSTROM, STUBBS, and WRIGHT seek pre-judgment interest at a rate commensurate with the actual rate of interest in the marketplace or, alternatively, the statutory rate of interest because of the delay in receiving the damages and to avoid unjust enrichment to HAIR CLUB. Plaintiffs also seek post-judgment interest at the maximum rate allowed by law in the event that HAIR CLUB do not promptly tender damages assessed against them and to avoid unjustly enriching HAIR CLUB.

## VII.

## PRAYER

WHEREFORE, premises considered, CRUMBLEY, KIMBLE, MARTIN, MURDOCK, NYSTROM, STUBBS, and WRIGHT pray that HAIR CLUB be cited to appear and answer herein, and that on a final trial, Plaintiffs have judgment against HAIR CLUB for:

a. Permanent injunction enjoining HAIR CLUB, its agents, successors, employees, and those acting in concert with HAIR CLUB, from continuing to violate CRUMBLEY, KIMBLE, MARTIN, MURDOCK, NYSTROM, STUBBS, and WRIGHT's civil rights.

b. All damages to which CRUMBLEY, KIMBLE, MARTIN, MURDOCK, NYSTROM, STUBBS, and WRIGHT may be entitled pursuant to this Original Complaint, or any amendment(s) thereto, including but not limited to back pay, reinstatement or front pay in lieu of reinstatement, loss of earnings in the past, loss of earning capacity in the future, loss of benefits in the past, loss of benefits in the future, statutory relief at law, and equity;

c. Compensatory damages for pain and mental suffering in the past and future;

d. Punitive damages in an amount above the minimum jurisdictional limit of the Court;

e. Reasonable attorney's fees, with conditional awards in the event of appeal;

f. Pre-judgment interest at the highest rate permitted by law;

g. Post-judgment interest from the judgment until paid at the highest rate permitted by law;

h. Costs of court and expert witness fees incurred by CRUMBLEY, KIMBLE, MARTIN, MURDOCK, NYSTROM, STUBBS, and WRIGHT in the preparation and prosecution of this action; and

i. Such other and further relief, at law or in equity, to which CRUMBLEY, KIMBLE, MARTIN,

MURDOCK, NYSTROM, STUBBS, and WRIGHT may be entitled, whether by this Original

Complaint or by any amendment hereto.

Respectfully submitted,
Troy J. Pradia

Troy J. Pradia
The Cox Pradia Law Firm, PLLC
Attorney-in-Charge
State Bar No. 24011945
Federal Bar No. 30260
1415 North Loop West, Suite 200
Houston, Texas 77008
Telephone: (713) 739.0402
Facsimile: (713) 752.2812
**ATTORNEY FOR PLAINTIFFS**